30108.   CONLEY v. THE STATE.

Decided September 8, 1943.

*W. L. Hailey, George L. Goode,* for plaintiff in error.
*R. Howard Gordon, solicitor-general,* contra.

Gardner, J.   The defendant was tried on an indictment for murder.   The jury returned a verdict for voluntary manslaughter, and fixed his punishment at not less than one nor more than three years in the penitentiary.   The defendant relies for a reversal on assignments of error on two special grounds.   The assignment of error on the general grounds, not having been argued, is considered as abandoned.   The special grounds deal with the same question and are based on the exclusion of testimony offered by the defendant.

The defendant and the decedent's mother lived in the same community in close proximity to each other.   It appears from the evidence that the decedent's father and other members of his family

were engaged largely in the manufacture and sale of whisky. The sheriff testified that on several occasions he had gone to the premises of the father of the deceased and searched for whisky, and on some of these occasions had found whisky there. On one occasion C. F. Outz, a brother-in-law of the deceased, was present. Defendant's brother was addicted to the use of liquor and the Walters family amply supplied his wants in this respect. This annoyed the defendant. It may be inferred from the evidence that this led to the death of the defendant's brother. One witness testified: "Lyndon's [meaning the defendant's] brother died over there about this time, but he didn't die from any liquor that my folks furnished him. I don't know what his brother died from—Lyndon cut his throat." At any rate the evidence reveals that enmity between the defendant and the Walters family grew intense, and increased until the time of the homicide involved in the instant case. The deceased and the defendant each threatened to take the life of the other. Heat of passion on each side was kept ablaze for some time before the homicide. On the day of the homicide (which occurred about dark), the deceased, his brother-in-law Outz, and the defendant, met in a by-road. The defendant shot the deceased, inflicting two pistol wounds, from which death resulted the following morning. The deceased did not regain consciousness after the shooting. As to what happened, we have the version of the brother-in-law Outz, a witness for the State, and the defendant's statement, together with the testimony of a witness for the defendant who claimed to have been at his home approximately seventy-five yards away. Outz's version is that when the three of them met, the deceased inquired of the defendant, "Ain't you the one that reported papa and them the other day? Lyndon said, 'No, I didn't.' And he shot and Sam fell." This witness testified further that the deceased had no weapon, and made no attack whatsoever on the defendant. There was other testimony to the effect that the deceased was smoking a cigarette which he still had in his mouth when he was carried to the hospital. This witness also testified that he and the deceased had no discussion about anyone having reported the liquor business to the sheriff and that when the deceased made the remark set out above to the defendant, the witness did not know to what the deceased was referring.

The defendant in his statement contended that when the three

of them met, the deceased remarked to him that he expected to settle it with him, whereupon the deceased took hold of the defendant with both arms around his neck, and threatened to kill him; that the deceased weighed approximately 200 pounds and the defendant weighed only 135 pounds; that the brother-in-law Outz had his knife open and that the deceased put his hand in his pocket, whereupon the defendant shot him in self-defense. The witness for the defendant who claims to have been about seventy-five yards away, corroborated the statement of the defendant that the deceased caught hold of the defendant.

We have narrated the evidence as set forth above for the purpose of giving a background, in order that we may better view the assignments of error in the special grounds. The witness Outz had testified that at the time that he was present when the sheriff searched the premises of his father-in-law, he (Outz) did not know what the sheriff was searching for, and did not know to what the deceased referred at the place of the killing when he asked the defendant "if he had not reported papa and them." The defendant offered the sheriff as a witness. The jury were excluded, and in their absence, the following questions were propounded to the sheriff and the following answers given: "Q. I believe you recall the date of the homicide? A. Yes. Q. You had been down to the Walters home previously? A. Yes, sir, I had. Q. You went there as an official of Hart County? A. Yes. Q. When you got there did you make your purpose known to the people who were there? A. Yes, sir. Q. To Mrs. Walters? A. Yes. Q. And if Outz was there, to him too? A. I don't recall about Mr. Outz. Q. He testified that he was there when you came. If he was there at the time you were there, he was informed of what you were doing? A. Everybody who was there would have known or did know what my mission was. Q. What was your mission? A. Searching for whisky. Q. Did you find whisky there? A. I have found some there. Q. More than once? A. Yes, sir. Q. You did search within a few months previous? A. I don't recall the date, but previous to that time we had. Q. You had been there in your capacity as sheriff? A. Yes. Q. They knew and everybody knew the search was for illicit whisky? A. Yes. Q. Did Mrs. Walters or any of them ever make complaint to you about the conduct of Mr. Connally? A. No." The court repelled this

testimony. The defendant contends that the repelling of this testimony was reversible error for the reason that it impeached the testimony of the witness Outz to the effect that he did not know what the sheriff was searching for at the home of Outz's father-in-law; and that it also would impeach the testimony of Outz that he did not know what the deceased referred to when he asked the defendant if he (defendant) had not reported "papa and them." In support of this contention counsel cites: *Tiller* v. *State,* 111 *Ga.* 840 (36 S. E. 201); *Wall* v. *State,* 153 *Ga.* 309 (4) (112 S. E. 142); *Bates* v. *State,* 4 *Ga. App.* 486 (2) (61 S. E. 888); *Lloyd* v. *State,* 40 *Ga. App.* 230 (149 S. E. 174). These decisions all go to the principle that all competent, relevant, and material evidence should be allowed to prove the main issue involved or to discredit the evidence of a witness for the opposite party. It will be noted that the witness Outz had made two definite statements, first, that he did not know what deceased referred to, and second, that he did not know what the sheriff was looking for. Also, it will be observed that in the testimony offered by the sheriff he did not purport to say that he had any conversation with Outz at the time he made the search. Indeed he did not recall that Outz was there at any time when he searched the premises. He relates no conversation with him, and gives no facts at all on which to base an assumption that Outz knew what the sheriff was searching for. His testimony simply amounts to a conclusion that if Outz was present he knew the purpose of the sheriff in visiting the premises of Walters. In our opinion it would be in excess of the authority of this court to reverse the case on this testimony, which we deem irrelevant, immaterial, and harmless. Compare *Black* v. *State,* 119 *Ga.* 746, 749 (47 S. E. 370); *Clarke* v. *State,* 41 *Ga. App.* 556 (2) (153 S. E. 616). Moreover, under the evidence, the background of the case, so far as this record is concerned, is colored with the fact that the Walters family was engaged in the liquor business; that the sheriff made frequent searches there, and not only the witness Outz, but the whole community was obliged to have known it. Therefore if the repelling of the evidence offered was error, it was harmless, for there was ample evidence substantially to the same effect which the jury had before it in its deliberations. In *Camp* v. *State,* 41 *Ga. App.* 459 (153 S. E. 382), this court held: "If the trial judge erred in excluding the evidence of possession of the

hogs, as complained of in the motion for a new trial, the error was harmless, for other witnesses testified substantially to the same effect." The court did not err in denying a new trial.

*Judgment affirmed. MacIntyre, J., concurs.*

BROYLES, C. J., concurring specially. I think that the ruling as to special ground 1 of the motion for new trial should be applied to special ground 2. The evidence the rejection of which is complained of in ground 2 was not relevant to any material issue in the case, and its rejection was not harmful error.